We'll hear In Re. Seven Oaks Partners. Thank you. Good morning. Good morning. May it please the Court, my name is John Carberry and I represent the appellant Cynthia Licata. This is an appeal from a decision of the Bankruptcy Court confirmed by the District Court disallowing Ms. Licata's proof of claim in the Debtors Chapter 11 case on the basis that it was filed late. On that fact, there's no question, the claim was filed late after the bar date that was set specifically for her. Can I ask you a question, because I know this comes up and it's a question that if I read the papers closely enough I probably would know the answer. And that is, there is much about notices being sent to addresses that were not in fact her address, right? Correct. Is it, I'm not asking what it is, but is it in the record what her address in fact was at that time? In her affidavit, which was submitted as an exhibit to the response to the objection to claim, she recites that she did not live at those addresses and in the last paragraph notes that she was living, does not give a specific address, but a different town in Florida. I will note that there was a typo in that, which was noted in our brief, but in the last paragraph of her affidavit she did note where she lived, although not a specific street address, but it is not a town where any of the notices were sent. It's a little bothersome because how do you, if there isn't an address there, how do you check up to see if she did indeed live there and not at one of the other six addresses that had been given to her? Well, Your Honor, there's no evidence in the record that there was any effort made to determine what her actual address was. The appellee's brief recites that they relied on documents that had been filed in earlier proceedings, including serving her at the address of the property, which was the subject of the underlying state court action, which had been foreclosed and which they knew she did not live at. So, Your Honor, there is no evidence in the record of any effort that was made what her actual address was. If there was and they said we could not locate her, then I would say that might be a different story, but in this case, they have recited the notices that were given to the various addresses she has stated and her husband has also stated that neither of them were living or doing business at any of the addresses that were used. I don't want to stick you there, but thank you. How about their lawyer? Their lawyer received verbal notice in a court proceeding in November of 2012 that there was a bankruptcy case pending. The certificate of service for the schedules which were sent out does include him, although he has indicated in his affidavit that he does not recall receiving that. Well, it doesn't matter whether he . . . I mean, we all received lots of mail. We don't recall all of the mail we received last year. Understood. He didn't deny that he received it. He did not deny that he received it. Addressed to his proper address. It was. He did deny, however . . . Was it independently memorable so that he would . . . it would stick in his mind that he got this? I . . . I wouldn't think so. I noticed in the bankruptcy court, but a lawyer is supposed to pay attention to claims that involve their clients. Understood, Your Honor, but I would also note that following that . . . Let me . . . to take it back, and I know this is recited in the papers. I'm sure you're familiar with it. The process of this case was such that the debtors did not list her as a creditor in any of their pleadings up until the point where they were called out by a state court judge in November of 2012, and that's the critical point that Your Honors are pointing to. After that, they went in and filed a motion to set a bar date for Ms. Licata because they had . . . the original bar date for the case had already passed. Connecticut has a little bit of an unusual procedure where the claims bar date is set immediately on the filing of the case, which differs from the Southern District and others. That date had passed long before she ever was included as a scheduled creditor. Then when they went in and scheduled her as a creditor, they listed it as disputed and unliquidated, and that was clearly false because they knew that her claim was the subject of a jury trial, it had been affirmed by the Connecticut Appellate Court, and that the argument in the Connecticut Supreme Court on that matter was conducted just 20 days before they filed for bankruptcy, and yet they never included anything that had anything to do with her claim. Had the Connecticut Supreme Court at that point dismissed the petition as improvidently granted? The Connecticut Supreme Court dismissed the petition as improvidently granted after the bankruptcy case was filed. So it was still pending before that court? It was still pending before that court, but it had been . . . the appeal to the Supreme Court had been dismissed prior to the time that they filed the amended schedules that included her claim and still said disputed and unliquidated. Now, under Rule 3002B3, I believe it is, she would not . . . if they had listed it correctly when they filed those amended schedules, she would not have had to file a claim because you only have to file a claim if, A, your claim is not scheduled, or B, your claim is listed as contingent, unliquidated, or disputed. And it was none of those things, notwithstanding the fact that that's what they put in there under oath, despite the fact that this was done months after the Connecticut Supreme Court had left . . . let the judgment stand. So, Your Honors, I would note that if it had not been for that bit of duplicity, she wouldn't have had to do anything. Her claim would have been allowed in the amount that was set forth in that amended schedule. Does any of this . . . Is a confusion like this something that a bankruptcy court has discretion to sort out and make right, by saying, well, this is kind of a mess, here's a new bar date, and send notice, and the notice is received, or not disputed to be received, by counsel. And then nobody acts for two years. That's one way of looking at this. You have to concede. But the notices of the bar date were not sent to counsel. There was nothing that was . . . he has specifically said he did not receive it. Mrs. Licata said she did not receive it. He says he . . . you just quoted him as saying he doesn't remember receiving it. No, that has to do with the schedules that were filed, not the notice of the bar date, which I thought I was addressing. I see. Yes. But he clearly said he did not receive the notice of bar date. He's not listed as a recipient on the notice, and the addresses used for Mrs. Licata are incorrect. I would note that . . . Where did . . . do you have any idea where they came from? It's a little odd for somebody to give six addresses and for a seventh one to actually be the right one. The Licatas have lived a rather tumultuous life. Mr. Licata filed for bankruptcy in 2002, a case which, believe it or not, is still pending in the bankruptcy court in Connecticut. Among other things, one of the moves was occasioned by the fact that Seven Oaks foreclosed on the home that is the underlying property here. The finances of the Licatas were somewhat strained throughout that entire period. So, would it be unusual for you or I to move six times in that period? Probably. Well, me anyway. But for them, it was really a function of strained finances and strained relationships. I would just note, we're talking about pioneer investment services here for excusable neglect. And I would just note that, first of all, obviously we have to get to the reason for the delay, which we've been discussing, which is perhaps the most important measure. But there are also others, including danger of prejudice to the debtor. The debtor confirmed a plan in this case, a plan that actually encompasses Mrs. Licata's claim if it were to be allowed. The case was held up for some period of time, but not by the fact that Mrs. Licata's claim was still up in the air. If her claim were to be allowed, the plan, and there's an appeal pending in the district court as to some of the terms of the plan, how it treats Mrs. Licata, would deal with it. The only one that there were only, I believe, $50 or thereabouts in unsecured claims in Class I, which have been paid. The only person that would have any downside at all, if her claim were to be allowed, would be Murray Chodos, the principal of Seven Oaks Partners, who is the architect of all of these filings, who swore on all of these that they were true, which they were not. What would happen if the claim is allowed is her claim would either be paid out pro rata with his, because his is subordinated to the Class I claims. We don't believe there's a basis for that. Or if it were not subordinated, her claim would be paid prior to his out of the proceeds out of a piece of property in Greenwich, Connecticut. I see my time is up, Your Honor. Have you reserved a minute's rebuttal? I have, Your Honor. We'll hear you then, sir. Thank you. Good morning, Your Honors. May it please the Court. I'm James Nugent. I represent Appellee Seven Oaks Partners. And, Your Honor, in this case, which is an unusual saga pending for many years in the courts in Connecticut, but the appellant bears a very heavy burden of proof here. The standard of review is abuse of discretion, and the appellant must prove excusable neglect under the standards announced by this Court. Henry Enron is the leading authority on that. The appellant really doesn't address the factual findings made by the bankruptcy court and which were confirmed in the affirmance issued by the Connecticut District Court on this point. Your adversary argues that there's no evidence that any of the addressees received the notice of the additional bar date, including counsel. The bar date notice was not served on Attorney Brown. The amended schedules were served on Attorney Brown. That was admitted. That was found conclusively by both courts below. And Attorney Brown, a member of the bar, submitted a false affidavit to the court that stated he was never served with anything. That was conclusively established to be false by the submission of a transcript from the state court proceeding in which it was openly discussed on the record that he had been served about the fact of the bankruptcy, the need to file a proof of claim. The transcript was of a proceeding which Mr. Brown attended? Oh, yes, Your Honor. Absolutely. And both the bankruptcy court and the district court decision discussed that fact at length. It's noted extensively in the appendix, pages 186, 187, and 183, and 184, and 185. Judge Arderton quoted from the transcript in her decision where the existence of the bankruptcy case was openly discussed on the record with the superior court judge. Attorney Brown admitted it and submitted a false affidavit to the court. His affidavit is the linchpin for the appellant's argument that they have not received notice and that linchpin fails. Both courts can- If the principle is that they were late in complying with the additional bar date, then what's the evidence that they ever got notice of the additional bar date? I don't hear you claiming that there's evidence that they got notice of the additional bar date. Initial bar date was mailed to every possible notice. No, I mean, I'm sorry, the additional. Yes, Your Honor. The bar date for Ms. Licata specifically was mailed to every address that a debtor's counsel could find for her. And as Your Honor noted in your earlier questions to counsel, Ms. Licata has studiously avoided informing anyone where she did in fact live except a city of about 700,000 people. There's no street address. There's no building. There's no independent proof offered whatsoever to confirm where she lived. A lease, a utility bill, something or other that would confirm her story of where she lived. So that is vague. Remind me, I'm sorry. Remind me which city. The affidavit says Sarasota, Florida. I note that service was made in Bradenton, Florida for a husband in the next town. But debtor's counsel made every effort to find an address they could locate to track her down and serve her. But regardless, Your Honor, the notice to her counsel constitutes compliance with governing standards. Judge Arderton's decision discusses the law in this point. I have further case law in my brief that the attorney involved with the client related to the subject matter in question. And Attorney Brown was definitely involved because he represented her and obtained the judgment on the counterclaim in her favor. Constitutes notice to the creditor. It is imputed. She's on notice. And that really resolves the bulk of any of the other issues in the case. Your Honor, the other problem was that the appellant never filed a motion to even allow the late file claim. The whole order of proceedings got reversed. So the claim was filed over a year after her bar date. In order to try to advance the case, I filed an objection to a claim that should never have even been on the docket to begin with. And the main problem there is, Your Honor, the issue of excusable neglect, which is the primary legal standard that the appellant must satisfy in this case, was never brought to the attention of the bankruptcy court. The first time excusable neglect was raised by the appellant was on appeal to the district court. So since the appellant never asked the bankruptcy court and never submitted evidence to the bankruptcy court to address the excusable neglect standard, it never ruled on that standard. It was never asked to. What's the basis for representing to the bankruptcy court, if there was such a representation, that the claim is disputed and unliquidated? I'm sorry. That the claim was disputed and unliquidated. I'm sorry, Your Honor, you're asking me why was that done? No. I missed your question. I'm sorry. What is the basis for representing to the bankruptcy court that a claim that had gone to a jury trial and been affirmed by an intermediate appellate court was disputed, or surely was disputed, but that it was unliquidated? Two responses there, Your Honor. It was introduced to a judgment, wasn't it? Was it not? It was, Your Honor, and the judgment was final. One is that under controlling law, it actually doesn't matter as long as the creditor has actual notice of the bankruptcy proceeding. They're on notice. They are required to investigate and respond. The claim wasn't listed in the bankruptcy filing? Not initially, but her lawyer was served with the amended schedules listing it as disputed, and that is the linchpin of the case. Attorney Brown represented Ms. Licata, admitted he represented her on the transcript as found by both courts, received the amended schedules listing her as a disputed creditor, and that imposes a burden for the creditor to review the schedules, look at them, and decide if they need to file a claim in the bankruptcy court. I don't know if they did it or not, but they never filed a claim for 13 or more months after the bar date passed. Furthermore, Your Honor, as the district court decision reviewed this and clearly examined the argument, once notice has been established, the determination of whether or not there was an improper scheduling of a claim actually becomes irrelevant. Notice absolves that problem, and the creditor now has the obligation to inspect the schedules, determine if there's a reason or need to file a claim, and to do so if necessary. And that was discussed at length in the district court decision, which is Joint Appendix 186, 187. Judge Artison's decision also in the appendix at 193 recited law on this same point, Your Honor. I did also my brief at page 20, that notice or actual knowledge of the bankruptcy case will result in the debt being discharged, irrespective of whether or not the debt was scheduled or not, or whether it was scheduled improperly. And beyond that, Your Honor, I would rest on our brief. Thank you for your rebuttal. Your Honor, as far as the issue concerning whether or not a motion to allow the late claim should have been filed, this case did come on in a rather unusual fashion. But the claim was filed by Ms. Licata's counsel at the time. An objection was filed, and the argument was made concerned by the debtor that there was not excusable neglect. So that was before the court at that time, and we did respond to it in court. As far as the question concerning what is the basis for listing the claim as disputed and unliquidated, Judge Artison, at page 192 of the joint appendix, noted that that seems unwarranted, although she did not use that as a basis for any further action. But I would just note, Your Honor, the cases do raise a burden, do create a burden for having a late claim filed. However, the courts, the Enron case, the Supreme Court in Pioneer, all note that the question of whether to allow a late claim is an equitable one, and the court must look at all the facts and circumstances surrounding the filing of the claim and the disallowance. And I would note in this case that the overwhelming evidence here is that the debtor went out of its way over an extended period of time to put burdens and obstacles in Ms. Licata's way to defeat her claim, which was, without a doubt, unliquidated, undisputed, and to this date, ten years later, remains unsatisfied. Thank you. Thank you, Your Honor. Thank you both. Well, reserve decision.